IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| THERESA SMITH, | ) | |
| | ) | 8:06CV698 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for resolution of Theresa Smith's appeal of a final determination of the Commissioner of the Social Security Administration denying her application for Social Security Disability and Supplemental Security Income benefits under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g).

**I.  BACKGROUND**

Theresa Smith ("Smith") protectively filed an application for supplemental security income (SSI) benefits on January 24, 2003. *See* Filing No. 11, Social Security Transcript ("Tr.") at 58. Her application was denied initially and on reconsideration. *Id.* at 27-35. A hearing was conducted by an Administrative Law Judge ("ALJ") on May 17, 2004, but was continued by the ALJ in order for Smith to undergo a complete psychological examination. *Id.* at 264. On March 25, 2005, following a second hearing, the ALJ found Smith not disabled as defined in the Social Security Act. *Id.* at 17-18. On September 22, 2006, the

Appeals Council of the Social Security Administration denied claimant's request for review.[1] *Id.* at 6-8.

Smith was born in 1947 and was fifty-five years old at the time she protectively filed for benefits. *Id.* at 55. She had been as a housekeeper, file clerk, office assistant and line server. *Id.* at 108. At the second hearing, Smith testified that she stopped working due to complications from hypertension, asthma, hyperparathyroidism and because of problems with her concentration and memory. *Id.* at 274-275.

**Medical History**

The Creighton University Medical Center Department of Medicine Outpatient Clinic treated Smith for various problems in 2002. The Creighton Clinic physicians diagnosed Smith with hypertension, asthma, COPD, increased calcium levels (hypercalcemia), hyperparathyroid, and possible sleep apnea. *Id.* at 152-80. On April 11, 2002, Smith had a parathyroid scan which was suspicious for parathyroid adenoma. *Id.* at 176.

On April 19, 2002, Smith went to the emergency room due to her high blood pressure and concern about the side effects of a recent increase in her medication dosage. *Id.* at 170-74. She was advised to take her medications as prescribed. *Id.* at 170.

On July 23, 2002, Dr. Houghton noted that Smith's hypertension was better but that her calcium was elevated. *Id.* at 163. On August 26, 2002, in a follow-up appointment, Smith complained of fatigue and there were indications of sleep apnea. *Id.* at 162. On

---

[1] On April 5, 2005, after the determination of the ALJ, but before the Appeals Council decision, Smith filed a new claim for benefits. In conjunction with that claim, Smith underwent a second psychological exam by Dr. Blake, which is included in the record and discussed *infra*. As a result, Smith was found to be under a disability beginning April 5, 2005. However, the Appeals Council found that the second psychological report was not new evidence, and did not provide a basis for changing the ALJ's decision in ths filing. Tr. at 7. At issue in this case is whether Smith is entitled to benefits from January 24, 2003 through April 5, 2005.

October 4, 2002, she was seen for her asthma and COPD that was not adequately treated. *Id.* at 155. Smith was started on Combivent, Advair and Alburtual. *Id.* Three weeks later, Smith's asthma and COPD were stable, but she suffered from bloating. *Id.* at 154. On November 18, 2002, Smith's asthma, COPD and hypertension were stable and she was instructed to continue with all her medications. *Id.* at 152.

Smith continued to receive treatment at the Creighton Clinic throughout 2003 for her hypertension, asthma, COPD, and hyperparathyroidism. *Id.* at 148, 191-215. On January 27, 2003, Smith's examination indicated elevated calcium and PTH levels. *Id.* at 148. Smith indicated that she was also suffering from constipation. *Id.* Dr. Houghton indicated that the constipation and aches could be related to her thyroid disorder. *Id.*

In February 2003, Smith was seen for numbness and elevated hypertension. *Id.* at 210. In March 2003, Smith's calcium level was at 10.7 (with reference ranges 8.7-10.6). *Id.* at 213. Her calcium levels continued at the high range in September and December with tests showing levels of 10.1 and 10.4, respectively. *Id.* at 211-212. Smith's physicians noted that her hypertension and COPD were stable or adequately controlled on several occasions with medication. *Id.* at 193, 195, 202, 207. A chest x-ray, performed on September 15, 2003, showed no active cardiopulmonary process. *Id.* at 215. In the course of her treatment, Smith, at the suggestion of her doctors, eventually went from one and one-half packages of cigarettes a day to one-half package a day. *Id.* at 279. Although, Smith's doctors continued to counsel her on the need to stop smoking. *Id.* at 191, 194, 197-98, 203, 206.

During 2004, Smith returned to the Creighton Clinic to continue her treatment for COPD, hyperparathyroidism, hypertension, and degenerative joint disease. *Id.* at 184-88,

227-31. Smith was also treated for possible TMJ or jaw dislocation and depressive symptoms. *Id.* at 187,189.

On February 13, 2003, Dr. Tom Chael, a non-examining Disability Determination Services (DDS) physician, performed a Physical Residual Functional Capacity Assessment. *Id.* at 136-44. Dr. Chael restricted Smith to occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking about 6 hours in an 8-hour work day, sitting 6 hours in an 8-hour work day*. Id.* at 137. Smith was also restricted from working where she would have concentrated exposure to extreme heat or cold, and even moderate exposure to fumes, odors, dusts, gases, or poor ventilation*. Id.* at 140. Dr. Chael indicated that Smith did not have any postural or manipulative limitations. *Id.* at 138-39. On April 4, 2003, Dr. Allen Hohensee, a non-examing DDS physician, reviewed and affirmed Dr. Chael's assessment. *Id.* at 145.

**Psychological Reports**

At the request of the ALJ, Patricia Blake, Ph.D., performed a psychological examination of Smith on June 25, 2004. *Id.* at 222-25. Dr. Blake noted that Smith was oriented and cooperative, however, her responses were slow and her abilities seemed characteristic of someone with borderline or lower intellectual ability. *Id.* at 223. Dr. Blake noted that Smith's performance on tests suggested some memory difficulty. *Id.* at 224. Dr. Blake noted that dementia had to be ruled out. *Id.* Dr. Blake also diagnosed Smith with borderline intellectual functioning and assessed her Global Assessment of Functioning

(GAF)[2] at 55.[3]  *Id.*  She also reported that Smith was not able to manage her benefits in her own interest.  *Id.* at 221.

In her narrative, Dr. Blake opined that Smith could interact appropriately with others and adapt to changes in the environment.  *Id.*  However, Dr. Blake's narrative conflicts with the Medical Source Statement of Ability to Do Work-Related Activity (Mental) she completed for Smith.  In the Medical Source Statement, Dr. Blake indicated that Smith's mental impairments affected her ability to respond appropriately to supervision, co-workers, and work pressures.  *Id.* at 221.  However, Dr. Blake did not indicate the degree to which Smith's ability was impaired.  *Id.*  Additionally, in the Medical Source Statement, Dr. Blake reported that Smith had slight limitation in her ability to understand and remember short, simple instructions and moderate limitation in her ability to understand and remember detailed instructions.  *Id.* at 220.  Finally, Dr. Blake noted in the Medical Source Statement that she did not have enough information to determine Smith's ability to carry out instructions or make judgments on simple work-related decisions.  *Id.*

On June 24, 2005, after the ALJ's decision in this case and in conjunction with a subsequent application for benefits, Dr. Blake performed another psychological assessment of Smith.  *Id.* at 241-45, *see supra,* footnote 1.  During the second exam, Smith's mood was normal and her affect blunted.  *Id.* at 242.  Dr. Blake noted no indications of perceptual disturbance or lack of contact with reality.  *Id.*  Smith did not have any observable signs of tension, anxiety, or psychomotor disturbance.  *Id.* at 242.  Her

---

[2]Global assessment of functioning is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations.  *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text revision 2000) ("DSM-IV-TR.")

[3] GAF of 51 through 60 is characterized by moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers.  *See* DSM-IV-TR 34.

judgment was fair and insight was poor.  *Id.*  Dr. Blake administered the Weschler Intelligence Scale.  *Id.* at 243.  Smith had a verbal IQ of 80, a performance IQ of 68, and a full scale IQ of 72.  *Id.*  Dr. Blake indicated that the data was insufficient to determine a diagnosis of dementia, but that "Ms. Smith's profile is similar to profiles for patients diagnosed with probable Alzheimer's disease."  *Id.*  Dr. Blake noted that Smith demonstrated adequate attention and concentration and that her effort was unclear.  *Id.*  She reported that the tests seemed to be a valid estimate of Smith's cognitive ability  *Id.*

**Welfare-to-Work**

In January 2005, James White, Ph.D., reported on Smith's participation in the Welfare-to-Work Program.  *Id.* at 129-30.  He noted that Smith had a "very serious bladder problem" and had to use the restroom every 30 to 40 minutes throughout the day.  *Id.* at 129.  Dr. Smith opined that, while Smith was capable of working, her condition would interrupt her ability to complete any task she may be assigned and, therefore, recommended that Smith not be allowed to work.  *Id.*

**Smith's Testimony at the First Hearing**

At the administrative hearing, held on May 17, 2004, Smith testified that she lived with her 14-year-old son and her 19-year-old daughter.  *Id.* at 253-54.  Smith testified that she had a high school education.  *Id.* at 254.  When asked about her impairments, Smith testified that she got tired frequently.  *Id.* at 255.  She stated that she had problems with her mind, but that no one was treating her for those problems.  *Id.* at 257.  The ALJ continued the hearing and sent Smith for a "complete" psychological consultative examination.  *Id.* at 264.

**Smith's Testimony at the Second Hearing**

At the second administrative hearing, held on November 9, 2004, Smith testified that her impairments included hyperparathyroidism, high blood pressure and asthma. *Id.* at 274. She stated that she had memory and concentration problems as well. *Id.* She testified that she had to use the restroom every half an hour or more during the day. *Id.* at 294. When asked about her activities, Smith testified that going up hills and steps made it difficult for her to breathe. *Id.* at 278. She stated that she could vacuum, do the dishes, and make some meals. *Id.* She testified that she and her children shared the household chores. *Id.* at 283.

Smith testified that she could walk about half a block. *Id.* at 280. She stated that she could sit for half an hour at a time. *Id.* Smith testified that she could lift a two-liter bottle of pop, but found it more difficult to lift a gallon of milk. *Id.* at 282. She stated that she did not have any problems lifting her hands over her head. *Id.* Smith testified that she did not have trouble picking up small items. *Id.* at 285. She stated that she had to take a nap during the day. *Id.* at 285. Smith testified that she smoked about half of a package of cigarettes per day. *Id.* at 278.

**Testimony of the Vocational Expert**

A vocational expert, David Detmer, also testified at the hearing. *Id.* at 295. The ALJ asked Mr. Detmer to assume a hypothetical person of Smith's age with a limited education and Smith's past relevant work. *Id.* at 300. This individual could lift and carry 15 pounds frequently and 20 pounds occasionally. *Id.* She could push and pull repetitively with her upper extremities and frequently with her lower extremities. *Id.* This individual could crawl or kneel occasionally and stoop or squat frequently. *Id.* She could use her hands for

manipulation. *Id.* at 301. The individual could occasionally use air or vibrating tools, but she could not work around moving machinery. *Id.* She could not work at unprotected heights or use a motor vehicle. *Id.* The individual should work in an environment free of dust, smoke, and fumes and should not work in extreme cold temperatures. *Id.* She had a slight impairment in her ability to understand and remember short, simple instructions and marked limitation in her ability to understand, remember, and carry out detailed instructions. *Id.* The individual could interact appropriately with the public or supervisors, make judgments, respond to usual work pressures, and respond to changes in the usual work setting. *Id.* at 302. The individual should have access to a restroom during normal breaks. *Id.* In response to the hypothetical question, the vocational expert testified that such an individual could perform Smith's past relevant work as a file clerk, office assistant, or cafeteria worker. *Id.* The vocational expert testified that such an individual could also perform unskilled jobs such as cashier, sales attendant, and fast food worker. *Id.* at 303-04.

**The ALJ decision**

The ALJ determined that the claimant had not engaged in substantial gainful activity since January 16, 2003. Smith was determined be of "advanced age" and to have impairments of hypertension, concentration and memory loss, hyperparathyroidism, chronic obstructive pulmonary disease, and diarrhea, that are considered "severe" based on the requirements in the Regulations, but she did not meet the determinable impairments listed in Appendix 1, Subpart P, Regulations No.4.

The ALJ found that Smith had the residual functional capacity to:

perform medium work, including the ability to lift 25 pounds occasionally and 15 pounds frequently. She can push and/or pull repetitively with the upper

and lower extremities on a frequent basis. She can stoop and squat frequently, but can occasionally crawl and kneel. The claimant can use her manipulative abilities, but she can only use air or vibrating tools occasionally, except for small office related equipment, such as an electronic eraser, which is unlimited. She cannot work around moving machinery (moving machinery meaning machinery which is not stationary on the ground), or at unprotected heights and cannot use a motor vehicle. She needs to work in an environment free of dust, smoke and fumes and cannot work in extremes of cold. She is slightly limited in her ability to understand and remember simple instructions and is markedly limited in her ability to understand, remember and carry out detailed instructions. The claimant would need to have access to a restroom, but her access could be confined to her lunch period or break time or normal, routine breaks. The claimant is not prevented from performing her past relevant work as a file clerk, office assistant, and cafeteria attendant.

The ALJ also determined that Smith was not prevented from performing her past relevant work as a file clerk, office assistant and cafeteria attendant. He applied Rules 203.14 and 203.15 of the Medical-Vocational Guidelines, used as a framework for decision making, to justify a finding of "not disabled." Finally, the ALJ determined that based on the claimants' age, education, vocational experience and residual functional capacity, the vocational expert indicated that an individual like the claimant could perform other work that exists in significant numbers in the national economy such as a cashier, sales attendant and fast food worker. The ALJ determined that the claimant has not been under a "disability," as defined in the Social Security Act.

## II. Discussion

**Law**

When reviewing a Social Security disability benefits decision, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996).

9

"Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support a decision." *Cox v. Apfel*, 160 F.3d 1203, 1206-07 (8th Cir. 1998). In determining whether the evidence in the record is substantial, the court must consider "evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).

The Social Security Administration has promulgated a sequential process to determine whether a claimant qualifies for disability benefits. *See* 20 C.F.R. § 404.1520(a) (1998); *Cox, 160 F.3d* at 1206. Under the Commissioner's regulations, the determination involves a step-by-step analysis of the claimant's current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and his or her age, education and work experience. 20 C.F.R. § 404.1520(a); *Flanery v. Chater,* 112 F.3d 346, 349 (8th Cir. 1997). The Commissioner determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *Cox*, 160 F.3d at 1206.

At step three of the sequential evaluation, if the claimant is found to suffer from an impairment that is listed in the Appendix to 20 C.F.R. Part 404, Subpart P ("the listings") or is equal to such a listed impairment, the claimant will be determined disabled without consideration of age, education, or work experience. *Flanery,* 112 F.3d at 349. The

listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. §§ 404.1525(a), 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1.

If a claimant has a severe mental impairment that neither meets nor is equivalent in severity to any mental impairment listing, the Commissioner will then assess residual functional capacity. 20 C.F.R. § 404.1520a(d)(3). In determining residual functional capacity, the ALJ must consider the effects of the combination of both physical and mental impairments. *Baldwin v. Barnhart,* 349 F.3d 549, 556 (8th Cir. 2003). The Social Security Act requires the Commissioner to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. *Cunningham v. Apfel,* 222 F.3d 496, 501 (8th Cir. 2000); 20 C.F.R. § 404.1523.

It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. *Sims v. Apfel,* 530 U.S. 103, 111 (2000) (noting that "Social Security proceedings are inquisitorial rather than adversarial."). It is well settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004) ("The ALJ possesses no interest in denying benefits and must act neutrally in developing the record"). The duty to develop the record extends to cases where the claimant is represented by counsel. *Snead v. Barnhart,* 360 F.3d at 838. The ALJ's duty to develop the record in a Social Security hearing may include seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped. *Smith v. Barnhart,* 435 F.3d 926, 930 (8th Cir. 2006); *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir. 2000) (holding that it was improper for an ALJ to rely on the opinions of reviewing physicians alone).

Under the regulations, "[m]edical source statements are medical opinions submitted by acceptable medical sources . . . about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis."  Soc. Sec. Ruling 96-5p.  The ALJ is "generally required to request that acceptable medical sources provide these statements with their medical reports."  *Id.; but see* 20 C.F.R. § 404.1513(b)(6) (stating that "the lack of the medical source statement will not make the report incomplete").

A treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" will generally be given controlling weight.[4]  *Reed v. Barnhart,* 399 F.3d 917, 920 (8th Cir. 2005); 20 C.F.R. § 416.927(d)(2).  The treating physician's opinion is given this weight because of his "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 416.927(d)(2).  By contrast, "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence."  *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998).  In addition, "whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations also provide that the ALJ must 'always give good

---

[4]The regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments."  § 416.927(a)(2).  "Treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source" who provides the claimant with medical treatment or evaluation on an ongoing basis. § 416.902.  By definition then, the controlling weight afforded to a "treating source" "medical opinion" is reserved for the medical opinions of the claimant's own physician, psychologist, and other acceptable medical source.  The opinions of other medical professionals, though not "treating sources" as defined in the regulations, can be afforded treating source status if associated with a physician, psychologist, or other acceptable medical source as part of a team approach to treatment.  *See Shontos v. Barnhart,* 328 F.3d 418, 426 (8th Cir. 2003) (giving treating source status to the group of medical professionals, including therapists and nurse practitioners who worked with claimant's psychologist, where the treatment center used a team approach).

reasons' for the particular weight given to a treating physician's evaluation." 20 C.F.R. § 404.1527(d)(2); *see Singh v. Apfel,* 222 F.3d 448, 452 (8th Cir. 2000).

If a claimant has a severe physical or mental impairment that does not meet the listing, the Commissioner will then assess residual functional capacity (RFC). 20 C.F.R. § 404.1520a(d)(3). "RFC is defined as 'the most [a claimant] can still do despite' his or her 'physical or mental limitations.'" *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004) (quoting 20 C.F.R. § 404.1545(a)). When determining a claimant's RFC, the ALJ must consider all relevant evidence, including the claimant's own description of her or his limitations, as well as medical records, and observations of treating physicians and others. *See Pearsall v. Massanari,* 274 F.3d 1211, 1217-18 (8th Cir. 2001); *see also* 20 C.F.R. §§ 404.1545, 404.1546.

In determining RFC, the ALJ must consider the effects of the combination of both physical and mental impairments. *Baldwin v. Barnhart,* 349 F.3d 549, 556 (8th Cir. 2003); *Cunningham v. Apfel,* 222 F.3d 496, 501 (8th Cir. 2000) (stating that the Commissioner is required to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling); 20 C.F.R. § 404.1523.

A hypothetical question posed to a vocational expert as part of the RFC determination must precisely set out all the claimant's impairments that are supported by the evidence. *Pickney v. Chater,* 96 F.3d 294, 297 (8th Cir. 1996). The hypothetical question must capture the concrete consequences of a claimant's deficiencies. *Id.* Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision. *Id.* at 296.

**Analysis**

In this case, the ALJ was alerted to Smith's potential mental limitations during the hearing on May 17, 2004. The hearing was adjourned while Smith was referred for a psychological evaluation. Tr. 264-65. The evaluation indicated that Smith had borderline intellectual functioning and possible dementia. *Id.* at 224. However, Dr. Blake indicated she had insufficient information to determine the full extent of Smith's work-related impairments. *Id.* at 220-21; 224. Thus, the ALJ had a duty to further develop the record.

Based on the ALJ's failure to request additional information regarding Smith's mental impairments, the ALJ did not properly assess Smith's mental limitations. *Cunningham v. Apfel,* 222 F.2d 496, 506 (8th Cir. 2000) (the failure to consider claimant's mental and other limitations stemmed in part from the ALJ's failure to adequately develop the record.) Therefore, the court finds that the ALJ did not properly assess Smith's mental impairments at the third step of the sequential evaluation process.

Even if the ALJ had completely developed the record at step three, the ALJ did not properly assess Smith at step four and five of the sequential evaluation process. In determining, Smith's residual functional capacity, the ALJ erroneously substituted his own judgment for that of the medical experts regarding Smith's physical and mental limitations. The ALJ found that Smith could lift 25 pounds occasionally and 15 pounds frequently, Tr. 21. This is unsupported by the record. Dr. Chael's Physical Residual Functional Capacity Assessment indicates that Smith is capable of lifting 20 pounds occasionally and 10 pounds frequently. Additionally, Smith's testimony indicated that she could lift a 2-liter bottle of pop, but could not lift a gallon of milk easily. *Id.* at 282. The ALJ provides no support, nor can this court find support for the finding that Smith is capable of lifting 25 pounds occasionally and 15 pounds frequently. The court finds that the only evidence in

the record indicates that Smith is capable, at most, of performing "light work," which is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(B).  Thus, the ALJ erred in determining Smith had a residual functional capacity to perform medium work.

More significantly, the ALJ substituted his own judgment for that of an examining psychologist.  The ALJ stated that "[a]lthough Dr. Blake indicated that the claimant seemed confused on examination and had some psychomotor retardation, the claimant did not appear to be confused at the hearing." Tr. 19.  In doing so, the ALJ discounted Dr. Blake's findings regrading Smith's mental abilities.  The ALJ is not permitted to substitute his own judgment for that of a physician.  *Pratt v. Sullivan*, 956 F.2d 830, 834 (8th Cir.1992) (per curiam) (reversible error for ALJ to substitute his own conclusions for diagnosis of examining psychiatrist).

The substantial evidence on the record indicates that Smith suffers from borderline intellectual functioning and possible dementia.  The ALJ indicated at the hearing that he considered Smith to have a limited education based on her mental limitations.  Tr. at 300. Additionally, the vocational expert testified that Smith's dementia affects her ability to work at the semi-skilled level.  *Id.*  Despite his testimony that Smith's dementia would limit her ability to work at semi-skill positions, the vocational expert indicated that Smith was capable of working at her prior semi-skilled employment.  However, this was based upon an erroneous hypothetical that included a worker able to work at the full range of medium work and did not include all of Smith's mental limitations.  The ALJ's failure to include Smith's mental impairments in the hypothetical questions posed to the vocational expert rendered those questions defective.  *Pratt v. Sullivan*, 956 F.2d at 836. The court finds the

substantial evidence does not support a finding that Smith is capable of performing her former employment at the semi-skilled level.

While the ALJ indicates that Smith was capable of working at her prior work, he performed the Medical-Vocational Guideline analysis under step five of the sequential evaluation pursuant to Rule 203.14 and 203.15. As indicated, the substantial evidence in the record provides that Smith was capable of performing, at most, light work at the unskilled level. Smith was "advance age" with a limited education due to her dementia. Smith should have been assessed pursuant to Rules 202.01 or 202.02 (limited to light work, at the advance age, limited educational level and past relevant work of unskilled or semi-skill which skills were not transferable to other positions.). Therefore, this court holds that under either 202.01 or 202.02, a finding of disabled would be warranted.[5]

Because substantial evidence supports the conclusion that Smith could not return to her former work, the burden is on the Commissioner to prove that there are jobs in the economy that Smith can perform. The Commissioner did not meet that burden. The record evidence does not support a conclusion that she retains the residual functional capacity to perform work that exists in the national economy. The ALJ's failure to include the proper mental and physical impairments in the hypothetical questions posed to the vocational expert rendered those questions defective. Smith is entitled to have the full extent of her mental and physical impairments reviewed and considered in combination.

If the record presented to the ALJ contains substantial evidence supporting a finding of disability, a reviewing court may reverse and remand the case to the district court for

---

[5] There is also substantial evidence in the record regarding Smith's need to have access to a bathroom every thirty minutes to one hour. The ALJ determined that this assertion was not supported by her medical records. Because the Court finds that Smith is disabled under 202.01 or 202.02 based on her other physical and mental limitations the Court does not need to address those claims.

entry of an order granting benefits to the claimant.  *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984).  In this case, the record contains substantial evidence of Smith's disability.  Under the circumstances, further hearings would merely delay benefits; accordingly, an order granting benefits is appropriate.  *Id.*

IT IS HEREBY ORDERED:

1. The decision of the Commissioner is reversed; and
2. This action is remanded to the Commissioner with instructions to award benefits.

DATED this 29th day of October, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Court Judge